UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

EMA Financial, LLC,

                Plaintiff,

-v-

FLITWAYS TECHNOLOGY, INC. *et al.*,

                Defendants.

20-CV-324 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff EMA Financial, LLC ("EMA") filed this action against Defendants Flitways Technology, Inc. ("Flitways"), Island Capital Management LLC ("Island Capital")[1], and Miro Zecevic, alleging violations of contract and securities law.  (Dkt. No. 1.)[2]  Before the Court are EMA's motion to enforce an on-the-record settlement and for summary judgment as to certain claims in its Amended Complaint, and Zecevic's cross-motion for summary judgment dismissing all causes of action against him on the theory that Zecevic is protected under New York's business judgment rule.

For the following reasons, EMA's motion for to enforce the settlement and for summary judgment is denied and Zecevic's cross-motion for summary judgment is denied.

**I.**  **Background**

The following facts are undisputed.

---

[1] EMA and Island Capital reached a settlement on August 8, 2021 (*see* Dkt. No. 74), and this action was subsequently dismissed as to Island Capital only.

[2] Following the Court's July 7, 2021 Opinion and Order granting EMA's motion to amend its complaint (*see* Dkt. No. 69), EMA filed an amended complaint that added additional claims against Zecevic and Flitways (*see* Dkt. No. 70).

In December 2020, EMA and Defendants appeared for a settlement conference before Magistrate Judge Robert W. Lehrburger. (Dkt. No. 83 ¶ 1.) The parties indicated that they had reached a settlement in principle during this conference, which Judge Lehrburger put on the record. (*See* Dkt. No. 83 ¶ 2; Dkt. No. 77-4.) In relevant part, Judge Lehrburger stated that EMA had reached a "deal [in] principle with Mr. Zecevic and Flitways," and provided the following terms: Zecevic must convert the outstanding principal amount of essentially $300,000 converted at the discount rate; this conversion would be executed by a transfer agent that was not Island Capital; the agreement must include a provision that Zecevic will not object or cause Flitway to object to the issuance of converted shares; and there would be a complete release among the parties. (Dkt. No. 77-4 at 3:4–4:8.) Judge Lehrburger then asked both parties if that was "what you understand the terms to be?" (Dkt. No. 77-4 at 4:9–10.) Counsel for EMA stated that he agreed that those were the principal terms and "in broad strokes that's our understanding." (Dkt. No. 77-4 at 4:12, 18–19.) Counsel for Defendants explained that "globally it sounds fine, sometimes the devil is in the details, so certainly we look forward to . . . reading [the settlement agreement] and moving on, going from there." (Dkt. No. 77-4 at 5:3–8.) Judge Lehrburger reiterated that there was still work to be done on the "specific language" regarding the term that Zecevic not interfere with the conversion and "not leaving in terms that are vague and ambiguous." (Dkt. No. 77-4 at 5:9–14.)

On December 29, 2020, EMA's counsel emailed a draft settlement agreement to Defendants' counsel. (Dkt. No. 83 ¶ 3.) Though EMA's counsel reached out Defendants' counsel several times, Defendants never provided comments to the draft settlement agreement and did not sign the agreement. (Dkt. No. 83 ¶¶ 4–11.) On January 21, 2021, Defendants'

counsel informed EMA that Flitways had filed for Chapter 11 bankruptcy in a Florida federal court; the bankruptcy action was dismissed on July 15, 2021.  (Dkt. No. 83 ¶¶ 12, 14.)

**II.      Legal Standard**

"A district court has the power, and indeed the duty, to enforce summarily, on motion, a settlement agreement reached in a case pending before it."  *Lindner v. Am. Express Corp.*, No. 06 Civ. 3834, 2007 WL 1623119, at *3 (S.D.N.Y. June 5, 2007).  To determine whether parties to an alleged oral agreement intended to be bound in the absence of a fully executed written document, the Second Circuit has outlined four factors:  "(1) [W]hether there has been express reservation of the right not to be bound in the absence of a writing; (2) whether there has been a partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  Under New York law, which applies here, the proponent of a contract has the burden of proving the existence of a binding contract by a preponderance of the evidence.  *See First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).

Summary judgment is appropriate when, construing the evidence in the light most favorable to the non-movant, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002) (quotation marks omitted).  The moving party has the burden of demonstrating that no genuine issue of material fact exists.  *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002).

### III. Discussion

#### A. Motion to Enforce Settlement Agreement

EMA argues that it is entitled to enforce the on-the-record settlement because the four factors articulated in *Winston* weigh in favor of concluding that the parties entered into a binding contract. (*See* Dkt. No. 78 at 7–10.) Zecevic contends that at a minimum, the parties did not agree to all material terms and therefore the oral agreement should not be enforced. (*See* Dkt. No. 82 at 3.)

The Court concludes that EMA has not satisfied its burden of proving by a preponderance of the evidence that both parties intended to be bound by an oral agreement in the absence of a fully executed written agreement.

##### 1. Reservation of Right Not to Be Bound

The first *Winston* factor contemplates whether either party expressly reserved the right not to be bound prior to the execution of a written document. Though this factor uses the term "express," courts in this District have considered whether the facts and circumstances of the case demonstrate an implied reservation. *See, e.g.*, *Winston*, 777 F.2d at 81 (explaining that though there was no express reservation, "language in the correspondence does reveal such an intent"). This factor is considered "the weightiest of the four." *Brady v. N.Y. Police Dep't*, No. 08 Civ. 3572, 2011 WL 534116, at *1 (E.D.N.Y. Jan. 5, 2011); *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (courts "need look no further" than the first *Winston* factor where an intent not to be bound is readily apparent).

This factor weighs against enforcement here. While the transcript of the settlement conference does not reveal any *express* reservation of the right not to be bound until the execution of a final written document, the record contains evidence of an implied reservation. Specifically, Defendants' counsel stated that while "globally," the terms sounded fine,

4

"sometimes the devil is in the details, so we certainly look forward to . . . reading [the settlement agreement] and moving on, going on from there." (Dkt. No. 77-4 at 5:3–8.) Counsel made this statement in response to Judge Lehrburger's question as to whether the parties agreed to the principal terms and immediately following a statement by EMA's counsel that the parties would need to work out the terms preventing Zecevic from impairing or interfering with the conversion. Implicit in this reservation of the right to consider the language of the agreement is the reservation of the right not to be bound until all terms are fully resolved. Judge Lehrburger also clarified that these terms still needed to be fleshed out. (Dkt No. 77-4 at 5:9–10.) He concluded the conference by stating that "hopefully this will be done" (Dkt. No. 77-4 at 5:16–17), suggesting that the parties had not, in fact, reached a final settlement.

Furthermore, the draft settlement agreement contains a merger clause that provides: "This Agreement constitutes the complete understanding between and among the Parties and supersedes all prior agreements and understandings, oral or written, between the Parties." (Dkt. No. 81-3 at 9 ¶ 6.4.) The presence of this merger clause is "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997); *see also Cruz v. OneSource Facility Serv., Inc.*, No. 03 Civ. 8233, 2005 WL 2923517, at *2 (S.D.N.Y. Nov. 4, 2005) (concluding that the presence of a merger clause "is a strong indication that the parties did not intend to be bound until the final written settlement agreement was executed").

The circumstances here are readily distinguishable from decisions in this Circuit where courts have concluded that neither party reserved the right not to be bound until the execution of a final written document. *See, e.g.*, *Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552, 554 (2d Cir. 2019) (finding no reservation of the right not to be bound absent a

writing where the magistrate judge had made clear that "the parties were about to enter into an enforceable oral contract and set forth all th[e] material terms" (internal quotation marks omitted)); *Geneva Labs. Ltd. v. Nike West Afr. Imp. & Exp., Inc.*, No. 19 Civ. 4419, 2022 WL 673257, at *8 (E.D.N.Y. Mar. 7, 2022) (concluding that the first factor weighed in favor of enforcement because the parties had not included a merger clause in the written document and because the magistrate judge had written in a minute entry that the parties had reached a settlement); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 21 Civ. 1006, 2021 WL 3671440, at *5 (S.D.N.Y. Aug. 17, 2021) (enforcing the on-the-record settlement where the magistrate judge had confirmed on the record "that the agreement as stated was binding and enforceable" and where both parties had agreed to the stated terms); *Samuel v. Bd. of Educ. of NYC*, No. 12 Civ. 4219, 2015 WL 10791896, at *4 (E.D.N.Y. Aug. 11, 2015) (first factor weighed in favor of enforcement because the plaintiff "agreed to the terms of the settlement and understood that it was a binding and enforceable agreement," and because "the Court made it abundantly clear that the settlement agreement was final and binding").  In contrast to these cases, Defendants' counsel here implied on the record that Defendants would not be bound before reviewing the written contract and the draft settlement agreement included a merger clause.  Both these facts strongly suggest that the parties did not intend to be bound until after the execution of a written agreement.

### 2. Partial Performance

The second factor, which has "the least sway with the court," *Walker v. City of New York*, No. 05 Civ. 0004, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006), considers whether there has been partial performance.  This factor weighs slightly in favor of enforcement of the on-the-record settlement, as the parties agreed on the record that EMA would draft a written document and EMA sent a draft settlement agreement to Defendants.  (*See* Dkt. No. 77-4 at 5:6–7, Dkt. No.

81). Numerous courts have concluded that agreeing on the record that one party would draft the agreement and drafting settlement paperwork subsequent to the on-the-record agreement constitutes partial performance. *See, e.g.*, *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, No. 14 Civ. 2329, 2016 WL 11263660, at *9 (E.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL 4221068 (E.D.N.Y. Sept. 22, 2017) (finding partial performance where one party had drafted the settlement agreement and opposing party provided comments); *Pullman v. Alpha Media Publ'g, Inc.*, No. 12 Civ. 1924, 2014 WL 5043319, at *10 (S.D.N.Y. Mar. 14, 2014), *report and recommendation adopted as modified*, 2014 WL 5042250 (S.D.N.Y. Sept. 10, 2014) ("[T]he parties began to perform on the agreement by exchanging and discussing drafts of the written contractual terms," where the parties stated at the settlement conference which party would send the first draft).

### 3.     Material Terms

The third factor considered by the Court is whether all the material terms of the contract had been agreed to at the settlement conference. This factor is satisfied when "there was literally nothing to negotiate." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019) (internal quotation marks omitted). "[E]ven minor or technical points of disagreement in draft settlement documents [are] sufficient to forestall the conclusion that a final agreement on all terms had been reached." *Hand v. N.Y.C. Hous. Pres. & Dev.*, No. 11 Civ. 1076, 2017 WL 4296751, at *4 (E.D.N.Y. Sept. 25, 2017) (internal quotation marks omitted).

During the settlement conference, Judge Lehrburger explained that the parties had reached a settlement in principle. (Dkt. No. 77-4 at 3:6.) He then listed the primary terms of the deal: Defendants would act on converting the outstanding principal amount, Zecevic was prohibited from objecting or causing the company to object to the issuance of the converted shares, and there would be a complete release between all parties. (Dkt. No. 77-4 at 3:12–4:8.)

7

After EMA's counsel explained that Zecevic would need to do a "little more than not objecting" (Dkt. No. 77-4 at 4:13), Judge Lehrburger stated that the "the lawyers do need to work out the specific language and the lawyers are going to work on particularly making specific and concrete the concept of Mr. Zecevic not interfering with the conversion and leaving in terms that are vague and ambiguous" (Dkt. No. 77-4 at 5:9–14).

Based on the record, the Court cannot find that all material terms were agreed upon by both parties. Indeed, as EMA's counsel noted during the conference, though Judge Lehrburger had provided the "broad strokes" of the parties' understanding, the terms preventing Zecevic from interfering with the conversion still needed to be clearly set forth in the written document. (*See* Dkt. No. 77-4 at 5:15–19.) Because the parties were still negotiating the precise parameters of this final term, including how to define the requirement that Zecevic be prohibited from "objecting" to the conversion, this factor weighs against enforcement.

### 4.      An Agreement Usually Committed to Writing

The final *Winston* factor is whether the agreement at issue is the type of agreement that would normally be reduced to writing. *See Winston*, 777 F.2d at 83. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. The complexity of the terms of the agreement and the period of time covering the settlement are considerations in analyzing this factor. *See, e.g., Oparah v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 8347, 2015 WL 4240733, at *7 (S.D.N.Y. July 10, 2015).

This factor is neutral. The terms of the agreement are somewhat complex and include an execution of several million shares of stock, a requirement that Defendants execute detailed instructions to the transfer agent, a provision prohibiting Zecevic from interfering in the conversion, and a release by all parties. (*See generally* Dkt. No. 81-3.) *Cf. Walker*, 2006 WL 1662702, at *9 ("The settlement agreement in this case was for one lump-sum of $7,500.00.

There was nothing complex about this agreement."). That being said, the agreement does not rise to the level of complexity contemplated in decisions that conclude that the terms are so complex that they would normally be reduced to writing. *See, e.g., Lindner*, 2007 WL 1623119, at *9 (concluding that the final factor weighed against enforcement because the terms included a requirement that defendant provide plaintiff with "letters containing precise language," and in turn, plaintiff "agreed to avoid future employment with [defendant], agreed not to disparage [defendant] publicly, and agreed not to disclose the terms of the settlement agreement").

### 5. Balance of the Factors

Based on a consideration of all the relevant facts and circumstance of this case and weighing all the *Winston* factors, the Court concludes that EMA has failed to establish the existence of a binding oral settlement agreement. Though the second and fourth *Winston* factors do not weigh against enforcement, most relevant to the Court's determination are the first and third *Winston* factors. These two are the most important factors because they go to the intent of the parties to be bound by the oral agreement. Based on the record, the Court concludes that the material terms had not been fully agreed to at the settlement conference, leaving room for additional negotiation, and Defendants communicated an intent not to be bound until they achieved a fully executed document.[3]

### B. Defendants' Cross-Motion for Summary Judgment

Defendants briefly argue that they are entitled to summary judgment because Zecevic is completely protected against all claims under New York's business judgment rule. (*See* Dkt. No. 82 at 7–8.) They argue that Zecevic's denial of EMA's conversion requests was made in good

---

[3] Because the Court concludes that the on-the-record settlement in principle is not enforceable, the Court denies as moot EMA's requests for specific performance, an inquest, and attorney's fees.

9

faith and upon the advice of legal counsel because EMA had not transferred the funds for the notes. (*Id.*) EMA counters that this rule does not apply because it submitted proof that it did, in fact, fund the two convertible notes through a wire transfer, and therefore, Zecevic had no reason to deny its conversion requests. (*See* Dkt. No. 86 at 16–17.) Further, it notes that the legal advice was based on the faulty assumption that there was no proof of funding. (*Id.*)

New York's business judgment rule "creates a presumption that a corporation's directors act in good faith and in the best interests of the corporation." *Patrick v. Allen*, 355 F. Supp. 2d 705, 710 (S.D.N.Y. 2005). Importantly, "[t]he business judgment rule will not protect a decision that was the product of fraud, self-dealing or bad faith," *id.*, nor does it protect directors who have an interest in a decision, *In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir. 1995). Moreover, "to earn the protection of the business judgment rule, directors must do more than merely avoid fraud, bad faith, and self-dealing . . . . [A] director's decision [must] be made on the basis of reasonable diligence in gathering and considering material information." *U.S. Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147, 159 (E.D.N.Y. 2018) (cleaned up).

Here, where Zecevic does not challenge the proof of funding submitted by EMA, there is no basis for concluding that the business judgment rule protects Zecevic's decision to deny EMA's conversion requests. If it is true that EMA transferred funds to Flitways, as contemplated under the parties' original agreements, then Zecevic's decision to deny EMA's conversion requests would at the very least not be protected because there is evidence that he failed to take reasonable steps to ascertain whether the wire transfer was executed.

## IV.   Conclusion

For the foregoing reasons, EMA's motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is DENIED.

The parties are directed to confer and to submit letters within fourteen days after the date of this Opinion and Order addressing proposals for the remaining phase of this case, including (1) proposed dates and estimated length of time for trial, and (2) any proposals for settlement discussions (e.g., mediation or another settlement conference before the Magistrate Judge).

The Clerk of Court is directed to close the motions at Docket Numbers 75 and 80.

SO ORDERED.

Dated: June 3, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge